**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PINKNEY JAMES, III and MAXINE JAMES | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11 CV 9126 |
| v. | ) | |
| THE VILLAGE OF WILLOWBROOK, | ) | Honorable Judge Holderman |
| GEORGE SCHWERTFEGER, | ) | |
| CINDY REGAN, BRIGAN DECARLO, | ) | Magistrate Judge Brown |
| JOHN O'MALLEY, JOZEF JANAS, | ) | |
| KEVIN HENRY, OFFICER THEODORE | ) | |
| KOLODZIEJ, COMMANDER MICHAEL KURINEC | ) | |
| OFFICER JOHN HANDZIK, CHIEF MARK SHELTON | ) | |
| OFFICER SCOTT EISENBEIS, OFFICER DANIEL | ) | |
| POLFLIET, OFFICER TIMOTHY KOBLER, and | ) | |
| COMMANDER WILLIAM BOZEK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

NOW COME the Defendants, THE VILLAGE OF WILLOWBROOK, OFFICER THEODORE KOLODZIEJ, COMMANDER MICHAEL KURINEC, OFFICER HANDZIK, CHIEF MARK SHELTON, OFFICER SCOTT EISENBEIS and OFFICER POLFLIET (collectively, "Defendants"), by and through their attorneys, James L. DeAno and Emily E. Schnidt of DeAno & Scarry, LLC, and in Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint, states as follows:

**JURISDICTION**

1. This action arises under 42 U.S.C. §§ 1982, 1983, 1985, and 1986, and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has jurisdiction over the pendent state law claims herein alleged pursuant to 28 U.S.C. § 1367(a).

ANSWER: Defendants admit the proper jurisdiction of this Court.

1

**VENUE**

2.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (b)(2). All parties reside in the Northern District of Illinois, and JOZEF JANAS the events giving rise to the claims alleged herein occurred in this judicial district.

ANSWER:  Defendants admit the allegations of Paragraph 2.

**PARTIES**

3.      PINKNEY JAMES III and his mother, MAXINE JAMES (collectively, "Plaintiffs"), are residents of DuPage County, Illinois. Plaintiffs resided in the VILLAGE OF WILLOWBROOK until being forced to move out of that community due to the persistent and racially-motivated harassment that they suffered there.

ANSWER:    Defendants admit that Plaintiffs are residents of DuPage County, Illinois and resided in the Village of Willowbrook at the time the incidents alleged in this Complaint occurred.  Defendants deny all other allegations of Paragraph 3.

4.      GEORGE SCHWERTFEGER was, at all times relevant to this action, a resident of THE VILLAGE OF WILLOWBROOK.

ANSWER:    Upon information and belief, Defendants admit the allegations of Paragraph 4.

5.      CINDY REGAN was, at all times relevant to this action, a resident of or frequent visitor to THE VILLAGE OF WILLOWBROOK. REGAN is the former wife of GEORGE SCHWERTFEGER.

ANSWER:    Upon information and belief, Defendants admit the allegations of Paragraph 5.

6.      BRIAN DELCARLO was, at all times relevant to this action, a resident of THE VILLAGE OF WILLOWBROOK.

ANSWER:    Upon information and belief, Defendants admit the allegations of Paragraph 6.

7.      JOHN O'MALLEY was, at all times relevant to this action, a resident of THE VILLAGE OF WILLOWBROOK.

ANSWER:      Upon information and belief, Defendants admit the allegations of Paragraph 7.

8.      JOZEF JANAS was, at all times relevant to this action, a resident of THE VILLAGE OF WILLOWBROOK.

ANSWER:      Upon information and belief, Defendants admit the allegations of Paragraph 8.

9.      KEVIN HENRY was, all times relevant to this action, a resident of THE VILLAGE OF WILLOWBROOK.

ANSWER:      Upon information and belief, Defendants admit the allegations of Paragraph 9.

10.      OFFICER THEODORE KOLODZIEJ was, at all times relevant to this action, employed as a police officer by THE VILLAGE OF WILLOWBROOK.

ANSWER:      Upon information and belief, Defendants admit the allegations of Paragraph 10.

11.      COMMANDER MICHAEL KURINEC was, at all times relevant to this action, employed as a police officer by THE VILLAGE OF WILLOWBROOK.

ANSWER:      Upon information and belief, Defendants admit the allegations of Paragraph 11.

12.      OFFICER JOHN HANDZIK was, at all times relevant to this action, employed by THE VILLAGE OF WILLOWBROOK.

ANSWER:      Upon information and belief, Defendants admit the allegations of Paragraph 12.

13.      CHIEF MARK SHELTON was, at all times relevant to this action, employed as a police officer by THE VILLAGE OF WILLOWBROOK. Prior to assuming the rank of Chief, and at certain times relevant to this action, he held the rank of Deputy Chief in the Willowbrook Police Department.

ANSWER:      Defendants admit the allegations of Paragraph 13.

14.    OFFICER SCOTT EISENBEIS was, at all times relevant to this action, employed as a police officer by THE VILLAGE OF WILLOWBROOK.

ANSWER:    Defendants admit the allegations of Paragraph 14.

15.    OFFICER DANIEL POLFLIET was, at all times relevant to this action, employed as a police officer by THE VILLAGE OF WILLOWBROOK.

ANSWER:    Defendants admit the allegations of Paragraph 15.

16.    OFFICER TIMOTHY KOBLER was, at all times relevant to this action, employed as a police officer by THE VILLAGE OF WILLOWBROOK.

ANSWER:    Defendants admit the allegations of Paragraph 16.

17.    COMMANDER WILLIAM BOZEK was, at all times relevant to this action, employed as a police officer by THE VILLAGE OF WILLOWBROOK.

ANSWER:    Defendants admit the allegations of Paragraph 17.

18.    THE VILLAGE OF WILLOWBROOK is a municipal corporation within the State of Illinois.

ANSWER:    Defendants admit the allegations of Paragraph 18.

19.    At all times relevant to this action, OFFICER THEODORE KOLODZIEJ, COMMANDER MICHAEL KURINEC, OFFICER JOHN HANDZIK, CHIEF MARK SHELTON, OFFICER SCOTT EISENBEIS, OFFICER DANIEL POLFLIET, OFFICER TIMOTHY KOBLER, and COMMANDER WILLIAM BOZEK (collectively, the "Officer Defendants") were acting under color of law and within the scope of their employment as police officers for THE VILLAGE OF WILLOWBROOK. The Officer Defendants are sued both in their official and individual capacities.

ANSWER:    Defendants admit the allegations of Paragraph 19.

## FACTS

20.     In 2002, Plaintiffs moved to 6300 Martin Drive in THE VILLAGE OF WILLOWBROOK, which is located in DuPage County, Illinois. THE VILLAGE OF WILLOWBROOK is a predominately white suburb of Chicago, Illinois. The African American population in THE VILLAGE OF WILLOWBROOK is small, totaling only around three percent of the general municipal population. After moving to THE VILLAGE OF WILLOWBROOK, Plaintiffs began to see from the actions of their neighbors and the police that they were unwelcome in this predominately white community.

ANSWER:     Defendants admit that Plaintiffs moved into the Village of Willowbrook in 2002. Defendants lack knowledge sufficient to admit or deny whether the Village of Willowbrook is predominately white suburb or the total percentage of African American population within the Village.  Defendants deny the remaining allegations of Paragraph 20.

21.     In March 2003, animal blood was thrown all over Plaintiffs' driveway and near their doorway. Plaintiffs called the Willowbrook Police Department. An unknown police officer answered the call, but refused to investigate or report Plaintiffs' complaint. The officer instead mocked Plaintiffs by stating: "Are you from the city? We have animals in this community." Plaintiffs protested that the multiple locations of the blood, the fact that the blood was smeared in each location, and the absence of any animal corpse near the house made the scene inconsistent with an accidental animal death. Despite this inconsistency and Plaintiffs' concerns, the Willowbrook Police Department chose not to pursue Plaintiffs' complaint.

ANSWER:     Defendants admit that Plaintiffs reported such an incident to police, but pleading further deny the remaining allegations of Paragraph 21.

22.    In the summer of 2003, Plaintiff PINKNEY JAMES III (hereinafter "PINKNEY") was awakened in the middle of the night by a strange man staring through his bedroom window. PINKNEY called the Willowbrook Police Department. The police officer who responded indicated that he would investigate the incident, but Plaintiffs were never informed of the results or outcome of that investigation, if in fact it even occurred.

ANSWER:    Defendants deny the allegations of Paragraph 22.

23.    In the spring of 2004, a pellet was shot into Plaintiff MAXINE JAMES' (hereinafter "MAXINE") bedroom window. Pellets were also shot into the windshield and headlight of the Range Rover automobile owned by Pinkney James, Jr., who is PINKNEY's father and MAXINE's husband. In addition, the family's Mercedes Benz automobile was damaged by an object that had caused a large dent on the driver's side of the vehicle.

ANSWER:    Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 and therefore neither admit nor deny said allegations, but demand strict proof thereof.

24.    In the fall of 2004, Plaintiffs received their first of many hate letters. Plaintiffs notified the Willowbrook Police Department about the letter. The police officers who responded said that maybe people disliked where Plaintiffs' family came from or what they wore. The officers wrote no reports regarding the letter, despite Plaintiffs' concerns.

ANSWER:    Defendants deny the allegations of Paragraph 24.

25.    In the spring of 2006, Plaintiffs called the Willowbrook Police Department because some of their neighbors were yelling racial taunts at Plaintiffs' family. Even after officers from the Willowbrook Police Department arrived, the neighbors continued making racial taunts and threats. The officers refused to do anything about the harassment.

ANSWER:     Defendants admit that Plaintiffs reported such an incident to police, but pleading further deny the remaining allegations of Paragraph 25.

26.     In the spring of 2006, some of Plaintiffs' neighbors, including some of the above-named defendants, came to Plaintiffs' home shouting that Plaintiffs should move. Plaintiffs called the Willowbrook Police Department. OFFICER JOHN HANDZIK and OFFICER SCOTT EISENBEIS arrived and joined the neighbors in saying that the Plaintiffs needed to move and that their music was too loud. OFFICER JOHN HANDZIK told Plaintiffs: "The people want the neighborhood to stay nice and they love their homes and they don't want you people ruining that." OFFICER SCOTT EISENBEIS stated that Plaintiffs were "gangbangers who hadn't been caught yet." One of the officers also said that the "CC" on MAXINE's Coco Chanel sunglasses stood for "Chicago Crip," apparently a reference to a Chicago street gang.

ANSWER:     Defendants admit that Plaintiffs reported such an incident to police, but pleading further deny the remaining allegations of Paragraph 26.

27.     In the summer of 2006, OFFICER SCOTT EISENBEIS circled Plaintiffs' home daily in a harassing, threatening manner. OFFICER SCOTT EISENBEIS would quickly accelerate in an attempt to scare or hit members of Plaintiffs' family with his squad car. In one instance, he very nearly struck MAXINE.

ANSWER:     Defendants deny the allegations of Paragraph 27.

28.     By 2006, some of Plaintiffs' neighbors, specifically GEORGE SCHWERTFEGER, BRIAN DELCARLO, JOHN O'MALLEY, JOZEF JANAS, and KEVIN HENRY (collectively, "Offending Neighbors") routinely trespassed on Plaintiffs' property and shouted racial slurs at them.

7

ANSWER:    Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 and therefore neither admit nor deny said allegations, but demand strict proof thereof.

29.    In the fall of 2006, Plaintiffs called the Willowbrook Police Department several times to report this trespassing. Each time, an officer would respond, but refuse to report the incident or even take Plaintiffs' complaint.

ANSWER:    Defendants admit that Plaintiffs reported certain incidents to police, but pleading further deny the remaining allegations of Paragraph 29.

30.    In the spring of 2007, the Offending Neighbors, particularly BRIAN DELCARLO and JOZEF JANAS, trespassed on Plaintiffs' property and routinely left dog waste on Plaintiffs' lawn. The Offending Neighbors would attack Plaintiffs with their dogs if Plaintiffs protested their behavior.

ANSWER:    Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 and therefore neither admit nor deny said allegations, but demand strict proof thereof.

31.    Also in the spring of 2007, Plaintiffs were victims of an attempted burglary when a man tried to break into Plaintiffs' home. The Plaintiffs called the Willowbrook Police Department. OFFICER DANIEL POLFLIET responded, but he refused to investigate or even report Plaintiffs' complaint. He did so despite Plaintiffs' having provided him a description of the man's vehicle, including the license plate number. OFFICER DANIEL POLFLIET commented to Plaintiffs that, "Maybe they don't like where you came from." OFFICER DANIEL POLFLIET further defended the offender saying that it was the man's first time and that he wouldn't do it again.

ANSWER:     Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs were victims of a burglary and therefore neither admit nor deny said allegations, but demand strict proof thereof. pleading further deny the remaining allegations of Paragraph 31.

32.     In February of 2007, Plaintiffs called the Willowbrook Police Department to remove a trespasser off their property. The trespasser was a woman who described herself as a friend of the JANAS family. She harassed Plaintiffs by stating: "The neighbors said you people don't belong here!" When Plaintiffs told her to leave, the woman responded "I have no respect for you!" Again, the officer who responded to Plaintiffs' call refused to investigate or even report Plaintiffs' complaint.

ANSWER:     Defendants deny the allegations of Paragraph 32.

33.     On September 8, 2008, as Plaintiffs left their home for a family member's birthday, they were startled by a white male standing at their front door trying to get in. Plaintiffs told the man to leave but he refused. A Village of Willowbrook police car was in the vicinity, and PINKNEY waved the car down to ask for assistance. The driver was OFFICER SCOTT EISENBEIS. He immediately and aggressively said to PINKNEY: "What do you want?!" PINKNEY explained about the trespasser and that his family feared for their safety. In response, OFFICER SCOTT EISENBEIS stated: "Your house, your problem. Get off your ass." He then added: "I won't do anything." PINKNEY said something to the effect of: "Well you are the ones that are supposed to do something. Please make him leave." The officer replied: "Fuck You!" After their encounter with OFFICER SCOTT EISENBEIS, Plaintiffs attempted to report the entire incident to DEPUTY CHIEF MARK SHELTON at the Willowbrook Police Station. DEPUTY CHIEF MARK SHELTON responded to Plaintiffs' complaints by saying, "I got a

black friend so I know how black people are." DEPUTY CHIEF MARK SHELTON refused to investigate, prosecute, or even report Plaintiffs' complaint.

ANSWER:      Defendants deny the allegations of Paragraph 33.

34.     In or around 2009, PINKNEY and a friend went to Dominick's grocery store. PINKNEY's friend was sitting at a table after purchasing a slice of pizza. Having observed the friend arrive with PINKNEY, OFFICER SCOTT EISENBEIS came over to PINKNEY's friend and told him that he better not be there when the officer drove back by the store. Plaintiff's friend had been sitting there less than two minutes when this encounter occurred. PINKNEY, who had gone home briefly, returned after the encounter to find his friend emotionally shaken. Plaintiff's friend was scared and did not want to visit again.

ANSWER:      Defendants deny the allegations of Paragraph 34.

35.     In another incident in 2009, while PINKNEY's girlfriend was visiting, OFFICER SCOTT EISENBEIS and another Willowbrook Police Officer came to Plaintiff's home, asked who the girlfriend was, and stated that she needed to show the officers some identification. The officers said that they did not want a "bad element" in the community. MAXINE told PINKNEY's girlfriend to go inside and the officers left. PINKNEY felt as though he could no longer invite friends or relatives to visit his family's home without their being harassed.

ANSWER:      Defendants deny the allegations of Paragraph 35.

36.     In March of 2009, MAXINE called the Willowbrook Police Department because Plaintiffs received a hate letter ("THE LETTER"). THE LETTER stated: "You Better sale your house nigger or I will sale it for you[.] [T]his is my neighborhood and county[.] Go Back to the Ghetto[.] I mean Business." The officers who responded to the call, including OFFICER

TIMOTHY KOBLER and OFFICER THEODORE KOLODZIEJ, said there would be an investigation, but they never contacted Plaintiff again about any such investigation.

ANSWER:     Defendants deny the allegations of Paragraph 36.

37.     In July of 2009, CINDY REGAN drove onto Plaintiffs' property and shouted threats about Plaintiffs continuing to live in the neighborhood. Plaintiffs asked the Police to file charges, but no officer ever did anything to honor Plaintiffs' request.

ANSWER:     Defendants deny the allegations of Paragraph 37.

38.     Also in July of 2009, a white male trespassed on Plaintiffs' property and attempted to gain access to Plaintiffs' Dodge Viper automobile. The man refused to leave. Plaintiffs called the local police dispatch, but no police officer arrived. Twenty minutes later, Plaintiffs called the local police dispatch again, and finally OFFICER DANIEL POLFLIET came and spoke with the offender. The officer did not arrest the offender but instead shook his hand.

ANSWER:     Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations that a trespasser entered upon Plaintiffs' property and therefore neither admit nor deny said allegations, but demand strict proof thereof. Pleading further deny the remaining allegations of Paragraph 38.

39.     In July of 2009, Plaintiffs called the Willowbrook Police Department because their neighbor, GEORGE SCHWERTFEGER, was filming Plaintiffs on their property against their will. GEORGE SCHWERTFEGER made threats about Plaintiffs' family refusing to move out of the neighborhood. Plaintiffs told DEPUTY CHIEF MARK SHELTON that GEORGE SCHWERTFEGER was recording them against their wishes. DEPUTY CHIEF MARK SHELTON stated that it was GEORGE SCHWERTFEGER's right to record Plaintiffs.

ANSWER: Defendants deny the allegations of Paragraph 39.

40.     Also in July 2009, a man attacked MAXINE while she washed her vehicle in the driveway. PINKNEY caught the man and fought with him, and MAXINE called the Willowbrook Police Department. The officer who responded laughed at Plaintiffs and repeatedly threatened to arrest PINKNEY if he attempted to defend MAXINE. The Willowbrook Police Department failed to adequately investigate the incident or to attempt to apprehend the perpetrator.

ANSWER: Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations that a man attacked Plaintiff and therefore neither admit nor deny said allegations, but demand strict proof thereof. Pleading further Defendants deny the remaining allegations of Paragraph 40.

41.     In the fall of 2009, Plaintiffs were doing yard work when a man in a small black sport utility vehicle attempted to strike MAXINE. Plaintiffs contacted DEPUTY CHIEF MARK SHELTON and gave him the offender's license plate number. DEPUTY CHIEF MARK SHELTON replied that he would investigate, but he refused to let Plaintiffs file a complaint.

ANSWER: Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations that a man attempted to strike Plaintiff and therefore neither admit nor deny said allegations, but demand strict proof thereof. Pleading further Defendants deny the allegations of Paragraph 41.

42.     In December of 2009, COMMANDER MICHAEL KURINEC, COMMANDER WILLIAM BOZEK, OFFICER JOHN HANDZIK, and OFFICER THEODORE KOLODZIEJ, entered Plaintiffs' property without a warrant and put Plaintiffs in handcuffs without any

probable cause. Plaintiffs were not committing any crime, nor were they resisting arrest. Nevertheless, these officers proceeded to drag Plaintiffs down the driveway. The officers struck, beat, and shoved Plaintiffs without justification. Plaintiffs received various injuries as a result of the excessive force the officers employed.

ANSWER:     Defendants deny the allegations of Paragraph 42.

43.     In February 2010, someone posted racist, defamatory statements regarding Plaintiffs on the internet. The postings, which appeared on the neighborhood "Topix" website, stated: "Maxine usually carries a snub nosed 38 special with hollowed point bullets in her crotch or black fanny pack around her hip. She has pulled out her gun and flashed it on numerous occasions on and off her property. Hopefully the neighborhood will stop making reports and start filing complaints." GEORGE SCHWERTFEGER and BRIAN DELCARLO repeated these false statements to several other people to denigrate Plaintiffs. Plaintiffs suspect that GEORGE SCHWERTFEGER may have authored the postings himself. On the same website, a neighbor using the nickname "The Punisher" commented on the prior posting by stating: "We must by any means possible remove these people from our community. Run them out, burn them out tree monkeys are zoo creatures whom are usually found hanging from trees we must band together and stay informed. I have read all the posted comments to your statement I say let's do away with all those people and take America back rid our country of blacks. I hate them now comes the heat. Thanks for the heads up let's give them hell. Take our country back and rid the community of the coons."

ANSWER:     Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 and therefore neither admit nor deny said allegations, but demand strict proof thereof.

44.     In March 2011, while at Dominick's grocery store, GEORGE SCHWERTFEGER approached Plaintiffs, yelling racial slurs and making threats about would happen to Plaintiffs if they did not move out of THE VILLAGE OF WILLOWBROOK. In the course of making these threats, GEORGE SCHWERTFEGER admitted that he had sent THE LETTER to Plaintiffs. MAXINE called the Willowbrook Police Department regarding the encounter. The officers who responded, including OFFICER TIMOTHY KOBLER and OFFICER THEODORE KOLODZIEJ, tried to discourage Plaintiffs from filing formal charges against GEORGE SCHWERTFEGER. Despite the officers' attempt to discourage them, Plaintiffs filed a criminal complaint that led to GEORGE SCHWERTFEGER being charged with disorderly conduct.

ANSWER:     Defendants admit that charges were brought against George Schwertferer, but pleading further, Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations that racial slurs were yelled and plaintiffs were threatened and therefore neither admit nor deny said allegations, but demand strict proof thereof.  Pleading further Defendants deny the allegations of Paragraph 44.

45.     Within days of Plaintiffs' March 2011 encounter with GEORGE SCHWERTFEGER in the Dominick's grocery store, Plaintiffs observed several of the Offending Neighbors, including BRIAN DELCARLO, KEVIN HENRY, JOHN O'MALLEY, and JOZEF JANAS, enter GEORGE SCHWERTFEGER's house while members of the Willowbrook Police Department were present there.

ANSWER:     Defendants deny the allegations of paragraph 45.

46.     In May 2011, when Plaintiffs drove to K-mart to shop, GEORGE SCHWERTFEGER approached them in a black sport utility vehicle with two other men. GEORGE SCHWERTFEGER proceeded to threaten Plaintiffs that they had better not show up

in court "or else!" Although Plaintiffs were complaining witnesses in a criminal proceeding against GEORGE SCHWERTFEGER, the members of the Willowbrook Police Department did nothing to address this incident.

ANSWER: Defendants deny the allegations of paragraph 46.

47. In June 2011, BRIAN DELCARLO and his brother, Nicholas, approached Plaintiffs in a green Lincoln and threatened them for their failure to leave the neighborhood. Although Plaintiffs approached CHIEF MARK SHELTON about these threats with video proof in hand, he nor any other member of the Willowbrook Police Department did anything to protect Plaintiffs from these ongoing threats.

ANSWER: Defendants deny the allegations of paragraph 47.

48. Also in June 2011, GEORGE SCHWERTFEGER came before the DuPage County Circuit Court on the disorderly conduct charge stemming from the encounter with Plaintiffs at Dominick's grocery store. At the conclusion of that hearing, GEORGE SCHWERTFEGER was ordered by the DuPage County Circuit Court to refrain from having further contact with the James family.

ANSWER: Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 and therefore neither admit nor deny said allegations, but demand strict proof thereof.

49. Nevertheless, on July 18, 2011, GEORGE SCHWERTFEGER approached Plaintiffs and stated: "You fucking people had me arrested. That house better sell sooner than later or there will be lots of trouble for you all!" He made these statements while videotaping Plaintiffs against their will. GEORGE SCHWERTFEGER violated the orders to stay away from Plaintiffs. Plaintiffs reported the incident to the Willowbrook Police Department. To date,

Plaintiffs have received no indication that GEORGE SCHWERTFEGER has suffered any repercussions for violating the court order to refrain from contact with Plaintiffs' family.

ANSWER:    Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 and therefore neither admit nor deny said allegations, but demand strict proof thereof.

50.    In September 2011, CINDY REGAN filed a false police report against Plaintiffs. In that report, CINDY REGAN falsely alleged that Plaintiffs had assaulted her by displaying gang signs in a manner that put her in fear for her life. Plaintiffs, however, videotaped this incident and attempted to show members of the Willowbrook Police Department the video to help substantiate a charge against CINDY REGAN for filing a false police report. The officers from Willowbrook Police Department refused to allow the complaint against CINDY REGAN.

ANSWER:    Defendants deny the allegations of paragraph 48.

51.    Since 2002, various members of the Willowbrook Police Department, together with the Offending Neighbors, have met at GEORGE SCHWERTFEGER's residence during evening hours. Offending Neighbors BRIAN DELCARLO and JOZEF JANAS have indicated that these meetings were to "deal with the unwanted James family being in the neighborhood."

ANSWER:    Defendants deny the allegations of Paragraph 49.

52.    Because of the extensive and racially-motivated harassment Plaintiffs suffered at the hands of their Offending Neighbors, coupled with the Officer Defendants' deliberately indifferent and discriminatory refusal to protect Plaintiffs, Plaintiffs have been forced to sell their home in THE VILLAGE OF WILLOWBROOK. Indeed, the environment in Plaintiffs' neighborhood had become so toxic for them that, prior to their move, they had to take up residence in a hotel to avoid being harassed. Plaintiffs were then forced to prematurely sell their

home at a loss in order to avoid the ongoing torment that they had been enduring. Because the home had been built in the birth year of the family's deceased daughter and because the family had moved to the home on her birthday, the home had enormous sentimental value to the family. Defendants' actions have deprived them of this deeply felt attachment.

ANSWER:    Upon information and belief, Defendants admit that Plaintiff's no longer live in the Village of Willowbrook, but pleading further deny the remaining allegations of Paragraph 52.

53.    Unfortunately for Plaintiffs, their move has not ended the harassment. The Offending Neighbors continue to say false, offensive, and racially derogatory things about Plaintiffs on the internet and elsewhere. Because of this continued torment, Plaintiffs are uncertain if they will ever obtain the peace of mind they so strongly desire.

ANSWER:    Defendants have insufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 and therefore neither admit nor deny said allegations, but demand strict proof thereof.

## COUNT I: EXCESSIVE FORCE – 42 U.S.C. § 1983
## AGAINST OFFICERS HANDZIK, BOZEK, KURINEC, AND KOLODZIEJ

54.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:    Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

55.    On December 22, 2009, OFFICERS HANDZIK, BOZEK, KURINEC, and KOLODZIEJ used excessive force against Plaintiffs. This excessive force included but was not limited to multiple kicks on each Plaintiff and excessively tight handcuffing.

ANSWER:    Defendants deny the allegations of Paragraph 55.

56. These officers violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures when they used excessive force against Plaintiffs.

ANSWER: Defendants deny the allegations of Paragraph 56.

57. OFFICER KOLODZIEJ handled MAXINE roughly by, among other things, slapping her on top of the hand with handcuffs. This attack left both a large lump on the topside of her hand and various contusions. After the handcuffing, MAXINE's wrists were swollen and inflamed. OFFICER JOHN HANDZIK slammed MAXINE against the squad car while she was handcuffed.

ANSWER: Defendants deny the allegations of Paragraph 57.

58. As a result of this use of excessive force, both Plaintiffs suffered extreme physical and emotional trauma.

ANSWER: Defendants deny the allegations of Paragraph 58.

## COUNT II: FALSE ARREST – 42 U.S.C. § 1983
## AGAINST OFFICERS HANDZIK, BOZEK, KURINEC, AND KOLODZIEJ

59. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER: Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

60. On December 22, 2009, OFFICERS HANDZIK, BOZEK, KURINEC, and KOLODZIEJ participated in the arrest of Plaintiffs.

ANSWER: Defendants deny the allegations of Paragraph 60.

61. There was no probable cause to arrest Plaintiffs and it was done in violation of their Fourth Amendment right to be free from unreasonable searches and seizures.

ANSWER: Defendants deny the allegations of Paragraph 61.

62.     As a result of Defendant's actions, Plaintiffs were deprived of their liberty and suffered extreme emotional and physical trauma.

ANSWER:     Defendants deny the allegations of Paragraph 62.

## COUNT III: CONSPIRACY – 42 U.S.C. § 1985
## AGAINST ALL DEFENDANTS

63.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:     Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

64.     Defendant Officers, together with the Offending Neighbors, formed an agreement to deprive Plaintiffs of their constitutional rights, namely their right to equal protection of the law. Indeed, Plaintiffs were purposefully deprived of the police protection that their white neighbors otherwise enjoyed.

ANSWER:     Defendants deny the allegations of Paragraph 64.

65.     Defendant Officers and the Offending Neighbors engaged in overt acts in furtherance of this unlawful agreement and in pursuit of their discriminatory purpose of removing Plaintiffs from THE VILLAGE OF WILLOWBROOK due to Plaintiffs' status as African Americans.

ANSWER:     Defendants deny the allegations of Paragraph 65.

66.     The actions of Defendant Officers and the Offending Neighbors were undertaken intentionally, with malice, and deliberate indifference to Plaintiffs' rights.

ANSWER:     Defendants deny the allegations of Paragraph 66.

67.     As a result of this unlawful conspiracy to deprive Plaintiffs of their constitutionally protected rights, Plaintiffs have suffered severe injury, including emotional distress and the forced sale of their beloved home.

ANSWER:     Defendants deny the allegations of Paragraph 67.

## COUNT IV: FAILURE TO PREVENT CONSPIRACY – 42 U.S.C. § 1986 AGAINST THE OFFICER DEFENDANTS

68.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:     Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

69.     The Officer Defendants failed to prevent a conspiracy between the Offending Neighbors and other individuals, including known and unknown members of the Willowbrook Police Department, to deprive Plaintiffs of their constitutionally-protected rights.

ANSWER:     Defendants deny the allegations of Paragraph 69.

70.     Specifically, the Officer Defendants failed to prevent known and ongoing acts of discriminatory behavior, including trespassing on Plaintiffs' property, assaults and batteries on Plaintiffs' persons, and other acts of a threatening and intimidating nature that were perpetrated against Plaintiffs because of their race.

ANSWER:     Defendants deny the allegations of Paragraph 70.

71.     The Officer Defendants' failure to intervene to prevent the unlawful conspiracy to deprive Plaintiffs of their right to equal protection caused Plaintiffs extensive harm, including but not limited to severe emotional distress and the sale of their beloved home.

ANSWER:     Defendants deny the allegations of Paragraph 71.

## COUNT V: EQUAL PROTECTION – 42 U.S.C. § 1983
## AGAINST THE OFFICER DEFENDANTS

72.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:     Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

73.     Plaintiffs are African Americans and, as such, members of a protected class.

ANSWER:     Defendants admit plaintiffs are African Americans but deny all legal conclusions in paragraph 73.

74.     Until their move, Plaintiffs were otherwise similarly situated to their white neighbors in THE VILLAGE OF WILLOWBROOK.

ANSWER:     Defendants deny the allegations of paragraph 74.

75.     Although the Officer Defendants employed by THE VILLAGE OF WILLOWBROOK protected white citizens and their property, they refused to investigate or even report complaints made by Plaintiffs regarding threats to Plaintiffs' safety and property.

ANSWER:     Defendants deny the allegations of paragraph 75.

76.     In failing to offer Plaintiffs the same protection as their white neighbors, the Officer Defendants acted with discriminatory intent and deliberate indifference.

ANSWER:     Defendants deny the allegations of paragraph 76.

77.     As a result of the Officer Defendants' actions, Plaintiffs have suffered deprivation of their right to equal protection and extensive harm, including but not limited to severe emotional distress.

ANSWER:     Defendants deny the allegations of paragraph 77.

## COUNT VI: DEPRIVATION OF PROPERTY RIGHTS – 42 U.S.C. § 1982
## AGAINST ALL DEFENDANTS

78.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:     Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

79.     Defendants acted with a racial animus when they conspired to force Plaintiffs from their home because they were African American.

ANSWER:     Defendants deny the allegations of paragraph 79.

80.     Because Plaintiffs were African American, Defendants discriminated against them in their abode and lifestyle, violating their right to equal protection of the law.

ANSWER:     Defendants deny the allegations of paragraph 80.

81.     Because Plaintiffs were African American, Defendants deprived them of their right to hold and use property by engaging in a pattern of harassment, use of racial slurs, trespassing, violence, and deprivation of equal protection of the law.

ANSWER:     Defendants deny the allegations of paragraph 81.

## COUNT VII: MUNICIPAL LIABILITY – 42 U.S.C. § 1983
## AGAINST THE VILLAGE OF WILLOWBROOK

82.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:     Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

83.     For each of the claims alleged above, the Officer Defendants acted pursuant to one or more of the following policies, practices, or customs of THE VILLAGE OF WILLOWBROOK and its Police Department.

ANSWER:     Defendants deny the allegations of paragraph 83.

84.     At all times material to this Complaint, THE VILLAGE OF WILLOWBROOK and its Police Department had:

> a.     policy, practice, or custom, sanctioned by high-ranking members of the Willowbrook Police Department and motivated by racial animus, of treating requests for police protection or intervention from Plaintiffs as less deserving of attention, investigation, or other action;
>
> b.     a policy, practice, or custom, sanctioned by high-ranking members of the Willowbrook Police Department and motivated by racial animus, of taking adverse action against Plaintiffs, including but not limited to their December 22, 2009 arrest, when requested to do so by Plaintiffs' white neighbors;
>
> c.     a policy, practice, or custom of allowing and encouraging Willowbrook police officers to conduct warrantless searches of property and seizures within the home absent exigent circumstances to justify such intrusion; of training Willowbrook police officers to conduct warrantless searches and seizures, whether or not exigent circumstances might be present; and/or of failing to provide its police officers adequate training to determine the presence or absence of exigent circumstances;
>
> d.     a policy, practice, or custom of allowing and encouraging the filing of false police reports, and of giving false statements and testimony about unlawful searches and seizures;
>
> e.     a policy, practice, or custom of failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control officers in its employ, particularly when, for years, THE VILLAGE OF WILLOWBROOK has known its officers engaged in misconduct, including warrantless searches and discriminatory enforcement practices;
>
> f.     a policy, practice, or custom of promoting, advocating, and/or allowing the police code of silence, where Willowbrook police officers refuse to report or otherwise cover-up instances of police misconduct, despite their reporting obligations under applicable law and police regulations.

ANSWER:     Defendants deny the allegations of paragraph 84.

85.     The interrelated policies, practices, and/or customs as set forth above were maintained by THE VILLAGE OF WILLOWBROOK and its Police Department with deliberate indifference towards Plaintiffs' constitutionally protected rights.

ANSWER:     Defendants deny the allegations of paragraph 85.

86.     As a result of these policies, practices, and/or customs, Plaintiffs were deprived of their constitutionally protected rights and suffered severe injury.

ANSWER:     Defendants deny the allegations of paragraph 86.

## COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – ILLINOIS COMMON LAW AGAINST ALL DEFENDANTS

87.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:     Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

88.     As described in the preceding paragraphs, Defendants have engaged in extreme and outrageous conduct with intent to cause, or in reckless disregard of the probability of causing, emotional distress to Plaintiffs.

ANSWER:     Defendants deny the allegations of paragraph 88.

89.     Plaintiffs have in fact suffered extreme emotional distress as a direct and proximate result of Defendants' actions. Defendants' actions have caused Plaintiffs such severe emotional distress as to force Plaintiffs to, among other things: take up residence in a hotel for a period of time to avoid contact with Defendants; sell their home and move to another

neighborhood out of fear of Defendants' harassment; and seek therapy for the past and ongoing torment inflicted by Defendants.

ANSWER:     Defendants deny the allegations of paragraph 89.

## COUNT IX: MUNICIPAL LIABILITY – 745 ILCS § 10/9-102
## AGAINST THE VILLAGE OF WILLOWBROOK

90.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

ANSWER:     Defendants restate their answers to the paragraphs of this Complaint as though fully set forth herein.

91.     THE VILLAGE OF WILLOWBROOK was, at all times material to this Complaint, the employer of the Officer Defendants.

ANSWER:     Defendants admit that the Village of Willowbrook was the employer of the Defendant Officers at all times.

92.     The Officer Defendants committed the acts alleged above in the scope of their employment for THE VILLAGE OF WILLOWBROOK.

ANSWER:     Defendants admit that the Defendant Officers acted in the course and scope of employment with the Village of Willowbrook at all times, but pleading further, deny all allegations of misconduct.

## AFFIRMATIVE DEFENSES

NOW COME the Defendants, THE VILLAGE OF WILLOWBROOK, OFFICER THEODORE KOLODZIEJ, COMMANDER MICHAEL KURINEC, OFFICER HANDZIK, CHIEF MARK SHELTON, OFFICER SCOTT EISENBEIS and OFFICER POLFLIET

(hereinafter "The Willowbrook Defendants"), and pleading affirmatively raise the following affirmative defenses:

### First Affirmative Defense
### Qualified Immunity

1.  Plaintiffs, Maxine James and Pinkney James, III, have pled in their Third Amended Complaint that the Defendants collectively deprived them of their rights under federal and state law.

2.  The Village of Willowbrook Defendants have answered the Complaint denying they are legally liable to the Plaintiffs, Maxine James and Pinkney James, III.

3.  That insofar as the claims against the Defendant Officers, Officer Theodore Kolodziej, Commander Michael Kurinec, Officer Handzik, Chief Mark Shelton, Officer Scott Eisenbeis, and Officer Polfliet, are brought against them in their individual capacities, Defendants assert that they are entitled to qualified immunity.

### Second Affirmative Defense
### Illinois' Tort Immunity Act

1.  Plaintiffs, Maxine James and Pinkney James, III, have pled in their Third Amended Complaint that the Willowbrook Defendants intentionally inflicted emotional distress on them.

2.  The Willowbrook Defendants have answered the Third Amended Complaint denying they are legally liable to the Plaintiffs.

3.  The Willowbrook Defendants have also denied that Plaintiffs, Maxine James and Pinkney James, III, have pled in their Third Amended Complaint have alleged any civil rights violation by these Defendants under federal and Illinois state law.

4.     There was in force and effect, in the State of Illinois, at the time of the occurrence in question, a certain statute which provides as follows:

a.     The Willowbrook Defendants, public employees serving in a position involving the exercise of discretion, are not liable for any injury to Plaintiff as a result of exercising such discretion. 745 ILCS 10/2-201.

b.     The Willowbrook Defendants, public employees, are not liable for their acts in the execution and enforcement of any law unless such acts constitutes willful and wanton conduct. 745 ILCS 10/2-202.

c.     The Willowbrook Defendants, public employees serving in a position involving the exercise of discretion, are not liable to pay punitive or exemplary damages for any injury to Plaintiff as a result of exercising such discretion. 745 ILCS 10/2-213.

d.     The Willowbrook Defendants, public employees acting within the scope of their employment, are not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204.

e.     The Willowbrook Defendants, public employees, are not liable for injury caused by their instituting or prosecuting any judicial or administrative proceeding within the scope of their employment, unless they acts maliciously and without probable cause.  745 ILCS 10/2-208.

f.     The Willowbrook Defendants, public employees, are not liable for any injury caused by their failure to enforce any law.  745 ILCS 10/2-205.

g.     Defendant, The Village of Willowbrook, as a local public entity, is not liable to pay punitive or exemplary damages in any action brought directly or indirectly by the Plaintiff. 745 ILCS 10/2-102

h.      Defendant, The Village of Willowbrook, as a local public entity, is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109.

i.      Defendant, The Village of Willowbrook, as a local public entity, it no liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law.  745 ILCS 10/2-103.

5.      The aforementioned sections of the Tort Immunity Act, immunize the Willowbrook Defendants and bar Plaintiffs, Pinkney James, III and Maxine James, from recovery in this cause herein.


WHEREFORE, the Defendants, THE VILLAGE OF WILLOWBROOK, OFFICER THEODORE KOLODZIEJ, COMMANDER MICHAEL KURINEC, OFFICER HANDZIK, CHIEF MARK SHELTON, OFFICER SCOTT EISENBEIS and OFFICER POLFLIET, deny that Plaintiffs are entitled to judgment in any amount whatsoever and respectfully request this Honorable Court enter Judgment in their favor, and against the Plaintiffs, along with the cost of this litigation.

**DEFENDANTS DEMAND TRIAL BY JURY**

Respectfully submitted,

DeAno & Scarry, LLC

_____s/Emily E. Schnidt_____
Attorney for Defendants, The Village of
Willowbrook, Officer Theodore Kolodziej,
Commander Michael Kurinec, Officer Handzik,
Chief Mark Shelton, Officer Scott Eisenbeis and
Officer Polfliet.

James L. DeAno
Emily E. Schnidt
DeANO & SCARRY, LLC.
53 West Jackson Boulevard, Suite 550
Chicago, IL 60604
Phone: (630) 690-2800
Fax:  (312) 564-4125